UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DSM DESOTECH, INC., *et al.,*

      Plaintiffs,

                                Civil Action 2:15-cv-70

v.                           Judge Michael H. Watson
                                Magistrate Judge Elizabeth P. Deavers

MOMENTIVE SPECIALTY
CHEMICALS, INC., *et al.*,

      Defendants.

## ORDER and REPORT AND RECOMMENDATION

Plaintiffs, DSM Desotech, Inc. and DSM I.P. Assets B.V., filed this action against Defendants, Momentive Speciality Chemicals, Inc. ("MSC") and Momentive UV Coatings (Shanghai) Co., Ltd. ("MUV"), alleging infringement of four patents covering optical fiber coatings.  Pursuant to the Court's September 16, 2015 Order, this matter is before the Undersigned for a Report and Recommendation on MUV's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF No. 18), Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery Under Rule 26(d) (ECF No. 23), and the parties' memoranda in opposition and replies filed in connection with these Motions (ECF Nos. 22, 24, 25, and 27).  In addition, this matter is before the Court for consideration of MUV's Motion to Stay Discovery (ECF No. 30), Plaintiffs' Memorandum in Opposition (ECF No. 34), and MUV's Reply (ECF No. 35).  For the reasons that follow, it is **RECOMMENDED** that MUV's Motion to Dismiss be **DENIED WITHOUT PREJUDICE** to renewal following jurisdictional discovery and that

Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery be **GRANTED**.  In addition, MUV's Motion to Stay is **DENIED**.

**I.**

According to the Complaint, MSC is a New Jersey corporation with its principal place of business in Columbus, Ohio.  MUV is a Chinese corporation with its principal place of business in Shanghai, China.  Plaintiffs allege that MUV is a joint venture with MSC and that MSC has a 49.99% ownership interest in MUV.  In their Complaint, Plaintiffs offer the following allegations relating to general and specific jurisdiction:

> This Court has personal jurisdiction over Defendants.  In particular, this Court has general personal jurisdiction over [MSC] because, on information and belief, [MSC] locates its global headquarters in this judicial district. On information and belief, [MSC] substantially, continuously, and systematically transacts business in this judicial district.  On information and belief, [MSC] has availed itself of the rights and benefits of Ohio law, previously admitted to personal jurisdiction in this Court, and availed itself of the jurisdiction of this Court.

> This Court has specific personal jurisdiction over Defendants. On information and belief, Defendants have committed acts of infringement of one or more claims of the Patents-in-Suit in the United States, the State of Ohio, and this judicial district. On information and belief, Defendants, directly or through their affiliates and agents, ship, distribute, offer for sale, sell, and/or advertise in the United States, the State of Ohio, and this judicial district, their optical fiber coatings that infringe one or more claims of the Patents-In-Suit.  For example, on information and belief, [MSC's] website, which is publicly available throughout the United States, the State of Ohio, and this judicial district, states: "The KlearShield*, SpectraShield* and BondShield products offered by our joint venture, [MUV] are UV curable optical fiber coatings, inks, ribbon matrix materials and adhesives for the telecommunications industry," and that "*KlearShield and SpectraShield are trademarks owned by [MSC]."  On information and belief, Defendants have purposefully and voluntarily placed their infringing optical fiber coatings into the stream of commerce with the expectation that the optical fiber coatings will be purchased by consumers in the State of Ohio and this judicial district.  On information and belief, these infringing products have been and continue to be purchased by consumers in the State of Ohio and this judicial district.

(Compl. ¶¶ 9–10, ECF No. 1.)

2

In its Motion to Dismiss, MUV asserts that this Court does not have personal jurisdiction over it because Ohio's long-arm statute is not satisfied and because its contacts with Ohio are insufficient to satisfy the requirements of due process.  In support of this assertion, MUV submits

the affidavit of Yong Ping Zhu, its Director of Sales and Marketing and also a member of its board of directors.  (ECF No. 18-1.)

In her affidavit, Ms. Zhu acknowledges that MSC owns 49.99% of MUV, but represents that MUV and MSC operate as separate companies, with MUV filing its own tax returns, maintaining its own books, preparing its own financial statements, and maintaining a separate address and phone lines.  (Zhu Aff. ¶¶ 2–3, ECF No. 18-1.)  She also states that to the "best of [her] knowledge," MSC and MUV offer different products to different industries.  (*Id*. at ¶ 4.) Ms. Zhu represents that MUV "does not import, sell, offer to sell, make or use any of the alleged infringing coatings for optical fibers in Ohio" and that it is "not aware of any of its revenue that is derived from products or services rendered in Ohio."  (*Id*. at ¶ 7.)  Ms. Zhu explains that MUV "does not sell its products to individual consumers" and that although it does sell to customers in the United States, none of these customers are in Ohio.  (*Id*. at ¶ 10–11.)  She adds that none of MUV's customers are MUV agents or have agreements to distribute its products and that MUV does not "exercise control over the distribution or sale of its customers' products."  (*Id*. at ¶ 11–12.)  Ms. Zhu states that "MUV has not targeted Ohio customers and has no knowledge of whether its customers' distribution networks extend into Ohio."  (*Id*. at ¶ 12.)  She also represents that MUV does not directly market to or provide support to any of its consumers and that it does not provide its customers with marketing materials for distribution.  (*Id*. at ¶ 12–13.) Finally, although Ms. Zhu concedes that MSC's website describes the alleged infringing

3

products, she describes the website as "informational" and states that the "products cannot be purchased from [MSC's] website and [that] the website does not provide information regarding prices, quantity, availability or terms of delivery of MUV products." (*Id*. at ¶ 8.)

In their Memorandum in Opposition to MUV's Motion to Dismiss, Plaintiffs—neither of which is incorporated in Ohio or has its principal place of business in Ohio, (Compl. ¶¶ 3, 5, ECF No. 1)—assert that they have "attempted to come to the [D]efendants' home forum in good faith." (Pls. Mem. in Opp. 3, ECF No. 22.) Plaintiffs maintain that this Court has personal jurisdiction over MUV because MUV purposefully placed its infringing optical fiber coatings in to the stream of commerce with the expectation that the coatings would be purchased by consumers in Ohio. In support of this assertion, Plaintiffs offer evidence reflecting that MUV derives substantial revenues by selling large quantities of the alleged infringing coatings to OFS Fitel, LLC, which incorporates the coatings into optical fiber that is resold through ongoing relationships with six retailers having thirty-seven branches throughout Ohio.

Plaintiffs assert that this Court also has personal jurisdiction in light of MUV engaging in "legally operative acts in Ohio, either directly or through its close relationship with [MSC]." (*Id*.) Plaintiffs adds that MUV "also appears to have transacted business, including making sales or offers for sale, from Ohio, by using efforts of its related entity [MSC] in the marketing and sale of [MUV's] optical fiber coatings." (*Id*.) Plaintiffs submit that MSC's most recent annual 10-K filing before the United States Securities and Exchange Commission, in which it touted its "ability to exercise significance [sic] influence over operating and financial policies (but not control)" of various entities, including MUV, contradicts Ms. Zhu's assertion that MSC is not involved in the sale of the accused coatings. (*Id*. (citing 2014 10-K, ECF No. 22-6 at p. 54).) Plaintiffs also posit that evidence showing that MSC prepares material safety data sheets

4

("MSDS") for MUV's coatings undermines Ms. Zhu's representation that MUV and MSC operate separately and that MSC does not supply MUV's coatings.  The MSDS Plaintiffs attached to their Memorandum in Opposition lists MSC as the "Manufacturer, Importer, Supplier" and states that "[a]ll products supplied by Momentive are subject to Momentive's terms and conditions of sale" and that "the product shall conform to Momentive's specifications."  (ECF No. 22-15 at p. 1, 11.)

Plaintiffs further posit that the branding of the products at issue is inconsistent with Ms. Zhu's representation that MSC and MUV offer different products to different industries.  In support of this assertion, Plaintiffs attach as an exhibit a product label that displays MSC's current or former name along with MUV's name.  (ECF No. 22-13.)  Plaintiffs also point out that MSC owns the trademark that is used in conjunction with MUV's alleged infringing products and that MSC advertises the infringing products on its website, providing MUV's contact information for customers in the "Americas."  (Pls.' Mem. in Opp. 10, ECF No. 22 (citing MSC website image, ECF No. 22-3).)  Plaintiffs further assert that MSC's website appears to be the sole advertisement and marketing channel for the alleged infringing products.  Finally, Plaintiffs assert that MUV officers hold or have held senior roles with MSC, which it maintains provide further indicia of the two companies' collaboration.

Plaintiffs maintain that Ohio's long-arm statute confers personal jurisdiction, citing Ohio Revised Code Sections 2307.382(A)(1), 2307.382(A)(3), and 2307.382(A)(4).  More specifically, Plaintiffs submit that Sections 2307.382(A)(1) and 2307.382(A)(3) confer jurisdiction because MUV appears to have transacted business, including making sales or offers for sale, from Ohio.  Plaintiffs contend that Section 2307.382(A)(4) confers jurisdiction because of the revenue MUV derives from the sales of the infringing coatings to OFS Fitel, which

5

distributes the coated optical fibers throughout Ohio.  Plaintiffs assert that jurisdiction also comports with the federal Due Process Clause.

In its Reply in support of its Motion to Dismiss, MUV asserts that the facts that Plaintiffs supplied in their Memorandum in Opposition are either unsupported or misleading.  By way of example, MUV asserts that although MSC did perform certain regulatory services such as generating of MSDSs for its products, these services were limited and did not include making, selling, using, or offering to sell MUV's products on its behalf.  MUV further states that the language on the MSDSs upon which Plaintiffs rely is "erroneous" and attributable to "clerical error" and that the product labels upon which Plaintiffs rely were shipped only to customers outside the United States.  (MUV's Reply 4–6, ECF No. 24.)  MUV also represents that all of its sales of its products to OFS Fitel "were made to an entity in China" and that it does not have "knowledge regarding what OFS Fitel does with its optical fiber coating products after the sales have been made."  (Wilson Aff. ¶¶ 14–15, ECF No. 24-1.)  Finally, MUV represents that its employees do not reside in or maintain offices in Ohio.

Contemporaneous with their Memorandum in Opposition to MUV's Motion to Dismiss, Plaintiffs' moved in the alternative to conduct jurisdictional discovery in order to discover the extent of MUV's contacts with Ohio.  (ECF No. 23.)  Plaintiffs assert that discovery is warranted because "[n]either the motion to dismiss nor the declaration of Yong Ping Zhu contains any supporting documentation," MUV's submissions fail to "reveal the full extent of [MUV's] contacts with Ohio," and public documents controvert Ms. Zhu's declaration.  (Pls.' Mot for Discovery 3, ECF No. 23.)

Plaintiffs state that they intend to serve the following thirteen written discovery requests should the Court permit jurisdictional discovery:

6

- Request No. 1: The identity of all customers, including but not limited to Corning Inc., Prysmian Group, OFS Fitel, and Furukawa Group, and suppliers of [MUV] related to optical fiber coatings, including information regarding the relationship, identification and location of each entity and/or person.

- Request No. 2: All U.S. distributors of [MUV] related to optical fiber coatings, including information regarding the identification and location of each entity and/or person.

- Request No. 3: Documents sufficient to identify each and every transaction negotiated, conducted or performed in the last two years by or on behalf of [MUV] with each entity and/or person identified in response to Request No. 1, the nature of each dealing and/or transaction, the amount of goods, services, and/or money involved, and the persons or entities with whom the dealings or transactions occurred.

- Request No. 4: Documents sufficient to identify all locations in Ohio where the optical fiber coatings sold or otherwise provided by [MUV] in the last three years are used.

- Request No. 5: All dealings, contracts, license agreements and/or transactions negotiated, conducted or performed by or on behalf of [MUV] with [MSC] related to optical fiber coatings, the nature of each dealing and/or transaction, and the persons and/or entities with whom the dealings or transactions occurred.

- Request No. 6: [MUV's] relationship with Prime Union Ltd. (50.01% owner of [MUV]), including any written agreements and/or contracts.

- Request No. 7: [MUV's] corporate structure, including information regarding the identification and location of all past and present groups, offices, centers, and departments, and directors, officers, managers, or entities acting in joint venture or partnership with any of the above parties and others acting on behalf of any of the above parties.

- Request No. 8: Any lease, security, co-ownership or other interest in real property or assets held in Ohio by [MUV] and all past and present direct and indirect parents, subsidiaries, affiliates, divisions, business units, predecessors in interest, or agents, and the location of the real property or asset.

- Request No. 9: Any interest in or relationship or involvement by [MUV] with business entities or persons located in Ohio, including information regarding the interest, involvement or relationship, and identification of each entity

and/or person.

- Request No. 10: All dealings and/or transactions negotiated, conducted or performed in Ohio in the last three years by or on behalf of [MUV], the nature of each dealing and/or transaction, and the persons or entities with whom the dealings or transactions occurred.

- Request No. 11: All advertising or marketing activities conducted in or disseminated to Ohio in the last three years by or on behalf of [MUV], including the nature and duration of each campaign.

- Request No. 12: Any travel to, residence in, or other contacts with Ohio of [MUV's] past and present officers, directors, agents, engineers, scientists, researchers, developers, employees, members and representatives, and all other persons acting on behalf of any such individual or individuals.

- Request No. 13: All communications in the last two years received from the contact information listed at https://www.hexion.com/Products/Main.aspx?id=3635, or related to any information provided therein, and any responses generated thereto.

(*Id*. at 5–6.)  In addition, Plaintiffs also seek permission to depose Ms. Zhu.

MUV opposes Plaintiffs' request for jurisdictional discovery.  (ECF No. 25.)  MUV asserts that such discovery is not proper because Plaintiffs have failed to set forth any legitimate facts or make a *prima facie* showing that this Court has jurisdiction.  MUV also asserts that the requested discovery is "overly broad, unduly burdensome, and is nothing more than a poorly disguised fishing expedition based upon only bare allegations."  (MUV's Mem. in Opp. 2, ECF No. 25.)  It particularly challenges the propriety of Request Numbers 1, 3, and 13.  More specifically, MUV challenges the geographic scope and confidential nature of the information sought in Request Numbers 1 and 3 and the burdensome nature of Request Number 13.

In their Reply in support of their Motion for Leave to Conduct Jurisdictional Discovery, Plaintiffs maintain that discovery is necessary to resolve the credibility and factual issues and that it has tailored its intended discovery requests to address personal jurisdiction over MUV.

8

(ECF No. 27.)  With regard to Request Numbers 1 and 3, which relate to MUV's customers and distributors, Plaintiffs contend that the requested information is important to the jurisdictional inquiry under their stream-of-commerce theory of personal jurisdiction.  Plaintiffs add that MUV's objection based upon the confidential nature of responsive documentation could be addressed with a protective order.  Plaintiffs assert that the information sought in Request Number 13 will reveal where the customers of the infringing product are located and what type of communications MSC is directing to MUV.  Plaintiffs represent, however, that they would be willing to consider a reasonable request to narrow Request Number 13 that is based upon an assessment of the quantity of the responsive documents.

On July 31, 2015, Plaintiffs served merits-based discovery on MUV, including a single interrogatory and four requests for production.  (ECF Nos. 30-1 and 30-2.)  Three days before its responses to Plaintiffs' discovery were due, MUV moved to stay all merits discovery pending resolution of the pending Motion to Dismiss for Lack of Personal Jurisdiction.  (ECF No. 30.)  Plaintiffs maintain that a stay is warranted given that this case is in the early stages of litigation and given that the pending Motion to Dismiss involves the threshold issue of personal jurisdiction.

Plaintiffs oppose MUV's Motion to Stay Discovery.  (ECF No. 34.)  Plaintiffs assert that delay in this action is highly prejudicial because it permits MUV to be able to continue to offer infringing products to the market.  Plaintiffs further assert that a stay of discovery is not warranted given that "[a]ny discovery exchanged now will be used in this forum or whichever forum the merits of this case are ultimately litigated."  (Pls.' Mem. in Opp. 1, ECF No. 34.)

In its Reply, MUV submits that the Court should reject Plaintiffs' alleged prejudice as a basis for denying the requested stay of discovery "because the stay requested should be relatively

short." (MUV's Reply 2, ECF No. 35.)  MUV also maintains that it is "far from clear" that this case will be litigated in another forum, explaining that it believes that this entire case lacks merit. (*Id*. at 3.)

## II.

Federal Rule of Civil Procedure 12(b)(2) provides that "lack of personal jurisdiction" is a defense to a claim for relief.  Fed. R. Civ. P. 12(b)(2).  The law of the Federal Circuit applies to personal jurisdiction challenges in patent infringement actions.  *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).  Where the "determination is based upon the records without an evidentiary hearing, plaintiffs need only show a *prima facie* case for personal jurisdiction.  *Grober*, 686 F.3d at 1345 (citing *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)).  In addition, "[w]hen analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in [the] plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor."  *Id*.; *see also Elecs. for Imaging*, 340 F.3d at 1349 (same).

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure."  *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed.Cir. 2009)).  Rule 4(k)(1) provides that service of process establishes jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Rule 4(k)(2), "the so-called federal long-arm statute," *Synthes*, 563 F.3d at 1290, provides that service of process establishes jurisdiction over a defendant if the claim arises under federal law, the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction comports

with due process. Fed. R. Civ. P. 4(k)(2). "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir. 2012) (citations omitted).

## A.      Rule 4(k)(1)

Under Rule 4(k)(1), the "[d]etermination of whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (internal quotation marks and citation omitted). In analyzing whether a particular state's statute is intended to reach the limit of federal due process, the Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court." *Touchcom,* 574 F.3d at 1409; *see also Daimler AG v. Bauman*, 134 S.Ct 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." (citing Fed. R. Civ. P. 4(k)(1)(A)). Applying authority from the Ohio Supreme Court, the Federal Circuit has held that "[t]he Ohio long-arm statute does not grant Ohio courts jurisdiction to the limits of the due process clause of the fourteenth amendment." *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, n. 1 (1994)); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*., 444 F.3d 1356, 1364 n.7 (Fed. Cir. 2006) (noting that the Ohio long-arm statute "does not grant jurisdiction to the limits of due process"); *see also Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 257–58 (2014) ("Because Ohio's long-arm statute is not coterminous with due process, . . . even satisfaction of the

11

long-arm statute does not justify the exercise of jurisdiction unless that exercise also comports

with the defendant's constitutional right to due process." (internal quotation marks and citations

omitted)).

"Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if

his conduct falls within the nine bases for jurisdiction listed by the statute." *Conn v. Zakharov*,

667 F.3d 705, 712 (6th Cir. 2012). Ohio's long-arm statute provides as follows:

> (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> > (1)  Transacting any business in this state;
> >
> > (2)  Contracting to supply services or goods in this state;
> >
> > (3)  Causing tortious injury by an act or omission in this state;
> >
> > (4)  Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> >
> > (5)  Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> >
> > (6)  Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
> >
> > (7)  Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.
> >
> > (8)  Having an interest in, using, or possessing real property in this state;

(9)   Contracting to insure any person, property, or risk located within this
state at the time of contracting.

(B)   For purposes of this section, a person who enters into an agreement, as a
principal, with a sales representative for the solicitation of orders in this state
is transacting business in this state. As used in this division, "principal" and
"sales representative" have the same meanings as in section 1335.11 of the
Revised Code.

(C)   When jurisdiction over a person is based solely upon this section, only a
cause of action arising from acts enumerated in this section may be asserted
against him.

Ohio Rev. Code § 2307.382.

Turning to the second inquiry, the Supreme Court has held that due process requires a
defendant to have sufficient "minimum contacts with [the forum state] such that maintenance of
the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.
Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). The
Federal Circuit has identified the following considerations as relevant for consideration of
specific personal jurisdiction: "(1) whether the defendant purposefully directed its activities at
residents of the forum state, (2) whether the claim arises out of or relates to the defendant's
activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable
and fair." *Celgard, LLC v. SK Innov. Co., Ltd.*, 792 F.3d 1373, 1377–78 (Fed. Cir. 2015)
(citations omitted). If the plaintiff satisfies its burden to establish the first two elements of the
due process requirement, "the burden shifts to the defendant to prove that personal jurisdiction is
unreasonable." *Id.* at 1378.

**B.     Rule 4(k)(2)**

As set forth above, even if this Court finds that MUV has insufficient contacts with Ohio
to support exercise of jurisdiction, jurisdiction in this Court may be appropriate under Federal

13

Rule of Civil Procedure 4(k)(2) "as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Merial Ltd*, 681 F.3d at 1294.  With regard to the first requirement, in *Touchcom*, the Federal Circuit held that where federal patent law creates the cause of action, the claims arise under federal law for purposes of Rule 4(k)(2).  574 F.3d at 1413 (citing 28 U.S.C. § 1338; *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 809 (1988)).

Turning to the second requirement of Rule 4(k)(2), the Federal Circuit adopted the approach endorsed in the Fifth, Seventh, Ninth, Eleventh, and DC Circuits, which places the burden on the defendant to designate a suitable forum in which the suit can proceed.  *Id*. at 1414–15.  The Federal Circuit adopted the following explanation articulated by the Seventh Circuit:

> "A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.  Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . .  If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit."

*Id*. at 1414 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).  The Federal Circuit therefore holds that the federal court is entitled to use Rule 4(k)(2) where a defendant contends it cannot be sued in the forum state and fails to concede jurisdiction in another state.  *Id*. at 1415; *see also Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1272–73 (Fed. Cir. 2010) (reversing for consideration of personal jurisdiction under Rule 4(k)(2) where the defendant challenged jurisdiction in the forum state, but did not concede jurisdiction in another state).  In *Merial Ltd*, the Federal Circuit clarified that "a defendant cannot defeat

14

Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent."  681 F.3d at 1294.

## C.    Jurisdictional Discovery

Plaintiffs have moved for leave to conduct jurisdictional discovery.  Recognizing that whether to allow discovery is "an issue not unique to patent law," the Federal Circuit applies the law of the regional circuit in considering whether a trial court abused its discretion in granting or denying jurisdictional discovery.  *Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010).  The United States Court of Appeals for the Sixth Circuit, like the Federal Circuit, recognizes that if a trial court rules on a Rule 12(b)(2) motion prior to trial "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion."  *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)); *see also Burnshire Dev., LLC v. Cliffs Reduced Iron Corp*, 198 F. App'x 425, 434 (6th Cir. 2006) ("[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." (citation omitted)). In an unpublished opinion, however, the Sixth Circuit held that where "the written submissions raise[] disputed issues of fact with regard to cross-corporate entanglements . . . the district court should [allow] further discovery or [hold] an evidentiary hearing."  *Drexel Chemical Co. v. SGS Depauw & Stokoe*, 59 F.3d 170, 1995 WL 376722, at *2 (6th Cir. June 22, 1995) (table opinion) (citations omitted).; *see also Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.

15

1981) (holding that a district court did not abuse its discretion in failing to permit discovery on

jurisdictional facts because the plaintiff had offered no factual basis for its jurisdiction claims,

but acknowledging that discovery "may have been advisable").  In determining the relevance of

a particular request for jurisdictional discovery, however, the law of the Federal Circuit applies.

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323

(Fed. Cir. 2005).

## III.

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

Because pertinent facts bearing on the question of jurisdiction are controverted, the

Undersigned concludes that the best course of action is to deny MUV's motion to dismiss

without prejudice to renewal following jurisdictional discovery.  Contrary to MUV's assertions,

Plaintiffs have made a sufficient threshold showing to merit jurisdictional discovery.  Moreover,

it appears that discovery may unnearth facts sufficient to support personal jurisdiction over

MUV.

For example, Plaintiffs have supported their assertion that jurisdiction is appropriate

under Ohio Revised Code Section 2607.382(A)(4) and the Due Process Clause via a stream-of-

commerce theory with evidence reflecting that the alleged infringing coatings are ultimately sold

in Ohio as a result of the sale of the coatings to distributor OFS Fitel, LLC.  *Beverly Hills Fan*

*Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–72 (Fed. Cir. 1994) (Chinese company's

ongoing shipment of ceiling fans to New Jersey distributor that distributed the fans within

Virginia sufficient to establish purposeful activity directed at Virginia, and state long-arm

statute's "substantial revenue" requirement was satisfied in light of the ongoing relationship with

the distributor and the evidence that fifty-two ceiling fans were present in Virgnia); *but see*

16

*Celgard, LLC*, 792 F.3d at 1380–81 (noting that neither the Federal Circuit nor the Supreme Court has decided whether stream-of-commerce jurisdiction requires something more than mere placement into the stream of commerce).  MUV's representation that all of its sales of its products to OFS Fitel "were made to an entity in China," (Wilson Aff. ¶¶ 14–15, ECF No. 24-1), does not, as MUV suggests, defeat personal jurisdiction under a stream-of-commerce theory. *See, e.g., Commissariat*, 395 F.3d at 1317–18 (stream of commerce originating in Taiwan with no direct sales in the United States by foreign defendant).

Plaintiffs have likewise offered evidence supporting their assertion that jurisdiction is appropriate under Ohio Revised Code Section 2607.382(A)(1) and (3) due to MSC's intimate involvement in MUV's sales of coatings in the United States.  For example, Plaintiffs have alleged and/or offered evidence reflecting that MSC is the sole marketer of MUV's coatings in the United States, MSC prepared the MSDSs for MUV's coatings, MSC listed itself as the "Manufacturer, Importer, Supplier" on the MSDSs, MSC displayed its name on the labels of MUV's shipping containers and bottles, MSC subjected MUV's coatings to its own terms and conditions, MSC developed specifications to which MUV coatings sold in the United States must conform, MSC exercised significant influence over MUV's operating and financial policies, and key MUV officers hold or have held senior roles with MSC.  MUV's assertion that many of the foregoing facts and allegations are either unsupported or misleading only underscores the need for discovery.  *See Drexel Chemical*, 1995 WL 376722, at \*2 (reversing trial court's dismissal for lack of personal jurisdiction where "the written submissions raised disputed issues of fact with regard to cross-corporate entanglements" with instructions to allow further discovery or hold an evidentiary hearing).

In sum, under the circumstances of the case, the Undersigned finds that jurisdictional

discovery is warranted as additional facts are likely available to assist the court in making the jurisdictional determination. It is therefore **RECOMMENDED** that MUV's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF No. 18) be **DENIED WITHOUT PREJUDICE** to renewal following jurisdictional discovery and that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery Under Rule 26(d) (ECF No. 23) be **GRANTED**. It is further **RECOMMENDED** that the Court set **February 29, 2016**, as the deadline for completion of discovery on the issue of personal jurisdiction and **March 15, 2016**, as the deadline for MUV to file a renewed motion to dismiss.

**B.** **Scope of Jurisdictional Discovery**

As discussed above, MUV has voiced challenges to the scope of three of MUV's proposed jurisdictional discovery requests. At this juncture, however, no discovery dispute is ripe for adjudication. The Court reminds the parties that the Federal Rules of Civil Procedure require that both motions for protective orders and motions to compel include a certification that the movant has, in good faith, conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Fed. R. Civ. P. 37(a)(1); Fed. R. Civ. P. 26(c)(1); *see also* S.D. Ohio Civ. R. 37.1 (exhaustion of extrajudicial means for resolving differences required before filing a motion under Rule 26 and Rule 37). Indeed, it appears that such consultation may be fruitful in narrowing the scope of the parties' disputes in light of Plaintiffs' representation that they would consider limiting the scope of some of their requests. (*See* Pls.' Reply 3, ECF No. 27.) The Court further reminds the parties that they "may first seek an informal telephone conference" with the Court prior to filing a discovery motion. S.D. Ohio Civ. R. 37.1.

18

Finally, the Court notes that in light of Plaintiffs' representation that they "attempted to come to the [D]efendants' home forum in good faith," (Pls. Mem. in Opp. 3, ECF No. 22), it appears that the instant disputes over personal jurisdiction and the proper scope of jurisdictional discovery could be resolved by agreement of the parties if MUV would simply identify the forums in which it concedes jurisdiction. Alternatively, should MUV fail to identify a forum in which Plaintiffs could have brought suit, the Court is entitled to use Rule 4(k)(2), which could impact the scope of discovery Plaintiffs seek to obtain. Thus, it appears that whether MUV concedes jurisdiction in another state is a threshold consideration.

## C.     Motion to Stay Merits-Based Discovery

If the Court adopts the Undersigned's recommendation that the pending Motion to Dismiss for Lack of Personal Jurisdiction be denied without prejudice, MUV's motion to stay merits-based discovery pending resolution of the Motion to Dismiss is technically moot. The Court will nevertheless construe MUV's Motion to Stay as alternatively seeking a stay pending completion of jurisdictional discovery and resolution any forthcoming renewed motion to dismiss.

The Federal Rules of Civil Procedure "permit[] a district court to issue a protective order staying discovery during the pendency of a motion for 'good cause shown.'" *Bowens v. Columbus Metro. Library Bd. of Trs.*, No. 2:10-cv-00219, 2010 WL 3719245, at *1 (S.D. Ohio Sept. 16, 2010) (quoting Fed. R. Civ. P. 26(c)). As the Sixth Circuit has often recognized, "[d]istrict courts have broad discretion and power to limit or stay discovery until preliminary questions which may dispose of the case are answered." *Bangas v. Potter*, 145 F. App'x 139, 141 (6th Cir. 2005) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). Furthermore, "[l]imitations on pretrial discovery are appropriate where claims may be dismissed 'based on

19

legal determinations that could not have been altered by any further discovery.'" *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (quoting *Muzquiz v. W.A. Foote Memorial Hosp., Inc*., 70 F.3d 422, 430 (6th Cir. 1995)).

In considering whether a stay is appropriate, "a court weighs the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery." *Bowens*, 2010 WL 3719245, at *1; *Charvat v. NMP, LLC*, No. 2:09–cv–209, 2009 WL 3210379, at *1 (S.D. Ohio Sept. 30, 2009).  "When a stay, rather than a prohibition, of discovery is sought, the burden upon the party requesting the stay is less than if he were requesting a total freedom from discovery." *Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-0292, 2010 WL 546349, at *1 (S.D. Ohio Feb. 10, 2010) (citing *Marrese v. Am. Acad. of Orthopedic Surgeons*, 706 F.2d 1488, 1493 (7th Cir. 1983)).  Nevertheless, "the fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery." *Bowens*, 2010 WL 3719245, at *2 (internal citation omitted) (denying the defendants' motion to stay discovery despite their pending summary judgment motion).

In the instant case, the Court finds that MUV has failed to demonstrate good cause for staying discovery.  As noted above, it is not enough that a case-dispositive motion is pending.  As Plaintiffs point out, even if MUV's Motion to Dismiss for Lack of Personal Jurisdiction was granted, the dismissal would be without prejudice to refile in an appropriate jurisdiction.  Thus, the merits-based discovery at issue will be available for use in any subsequent action, and granting a stay will only delay the resolution of Plaintiffs' claims against MUV.  In denying a request to stay discovery pending a motion to dismiss for lack of subject matter jurisdiction, this Court reasoned that requests for stays pending resolution of cases that do not go to the merits of the case are less compelling:

[R]equests for a stay of discovery pending the resolution of an initial Rule 12 motion are not limited to motions brought under Rule 12(b)(6).  Parties commonly move for stays of discovery pending a variety of Rule 12 motions, including motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, or improper venue. However, the impact of these types of motions on the issue of whether discovery should proceed is not substantially different.  In fact, it could be argued that because these types of motions do not go to the merits of the case, but only to the forum in which it proceeds, there is even less reason to stay discovery pending their outcome. Any discovery taken while such a motion is pending would, of course, be available for the parties to use if the case is dismissed other than on the merits and then refiled in a Court where subject matter or personal jurisdiction is proper.

*     *     *

There is little doubt that if this Court finds that it lacks subject matter jurisdiction, [the plaintiff] will simply file his case in the Common Pleas Court, which clearly has jurisdiction. . . . The discovery he proposes to conduct, or has already served, while the motion to dismiss is under advisement will be fully available for use in any subsequent state court action.  Thus, granting the defendants' motion would not really save them any resources in the long run, but would delay the ultimate resolution of the case in this Court, should it remain here, and might have a similar effect on any state court case filed.  Under these circumstances, the defendants have simply not met their burden of demonstrating that a stay of discovery is appropriate, and their motion will be denied.

*Charvat*, 2009 WL 3210379, at *2–3; *see also Oxford Lending Group, LLC v. Underwriters at Lloyd's London*, No. 2:10-cv-94, 2010 WL 4026145, at *2 (S.D. Ohio Oct. 12, 2010) (denying to stay discovery pending resolution of a motion to dismiss for lack of personal jurisdiction, explaining that staying discovery could dely the ultimate resolution of the case because any dismissal would be without prejudice to refile in an appropriate jurisdiction); *Slate Rock Const. Co., Ltd.*, *v. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 WL 1641470, at *3–4 (S.D. Ohio May 2, 2011) (permitting merits discovery notwithstanding pending jurisdictional and venue motions, finding "little reason to delay [the] discovery" because the proponent of discovery would ultimately be able to obtain and utilize the discovery in an alternative forum even if the pending jurisdictional and venue motions were successful).

The sole case MUV relies upon to support its request, *Victoria's Secret Stores Brand Mngmt, Inc. v. Bob's Stores LLC*, No. 2:13-cv-1261, 2014 WL 1045994 (S.D. Ohio Mar. 17, 2014), does not persuade the Court to conclude that MUV has satisfied its burden to demonstrate that a stay of discovery is warranted.  In *Victoria's Secret*, the Court granted the requested stay pending resolution of the motion to dismiss for lack of personal jurisdiction where the moving party filed its motion before any discovery had been served and prior to the preliminary pretrial conference.  Here, in contrast, the Court held the Preliminary Pretrial Conference more than four months ago, Plaintiffs have already served merits-based discovery, and the Undersigned has recommended dismissal without prejudice of the pending Motion for Dismissal for Lack of Personal Jurisdiction.  Notwithstanding these differences in the procedural posture, *Victoria's Secret* simply illustrates that a trial court has broad discretion in deciding whether to stay discovery in a particular case.  Under the circumstances presented in the instant action, the Court finds that MUV has not satisfied its burden of demonstrating that a stay of merits-based discovery is appropriate.

Accordingly, MUV's Motion to Stay (ECF No. 30) is **DENIED**.

## IV.

For the reasons set forth above, it is **RECOMMENDED** that MUV's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF No. 18) be **DENIED WITHOUT PREJUDICE** to renewal following jurisdictional discovery and that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery Under Rule 26(d) (ECF No. 23) be **GRANTED**.  It is further **RECOMMENDED** that the Court set **February 29, 2016**, as the deadline for completion of discovery on the issue of personal jurisdiction and **March 15, 2016**, as the

deadline for MUV to file a renewed motion to dismiss.  Finally, MUV's Motion to Stay (ECF No. 30) is **DENIED**.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).      **IT IS SO ORDERED**.

Date:  November 24, 2015                    _____ /s/ *Elizabeth A. Preston Deavers* _____
                                                          ELIZABETH A. PRESTON DEAVERS
                                                          UNITED STATES MAGISTRATE JUDGE